No. 67,819

In the Matter of PAUL W. DWIGHT, *Respondent*.

(834 P.2d 382)

Opinion filed July 10, 1992.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for the petitioner.

*Paul W. Dwight,* pro se, argued the cause for the respondent.

*Per Curiam:* This is an original attorney discipline proceeding filed by the Office of the Disciplinary Administrator against Paul W. Dwight, of Shawnee, Kansas, an attorney duly admitted and licensed to practice law in Kansas.

At the formal hearing herein, held February 25, 1992, the respondent stipulated to the factual allegations of the formal complaint and the violations of the Model Rules of Professional Conduct pled therein. The facts are as follows. Respondent was admitted to the bars of the states of Kansas and Missouri in 1988. He was hired as an associate in the Kansas City, Missouri, firm of Brown, James and Rabbit, P.C. In 1989, he was assigned, by David R. Buchanan, a managing partner in the law firm, to work on the case of *Industrial Indemnity Insurance Co. v. Catwill Corporation, et al.,* case No. 89-C-11370, filed in the District Court of Johnson County, Kansas. The firm represented the plaintiff in this complex declaratory judgment action.

The hearing panel found:

"4. Respondent was primarily responsible for management of the file and was in attendance at virtually all court proceedings in this matter by himself. Direct communications with his law firm's client, Industrial Indemnity, were generally handled by Mr. Buchanan.

"5. During the course of the litigation, Industrial Indemnity, over objection, was ordered to produce certain documents pursuant to a discovery request. When the plaintiff failed to produce all the documents pursuant to a Court order, sanctions were entered against Industrial Indemnity on August 13, 1991. Respondent failed to disclose to Mr. Buchanan that the Court had ordered full responses to discovery requests. Respondent removed motions, memoranda, notices, orders and correspondence concerning de-

fendant's discovery requests from the mail before Mr. Buchanan saw the documents.

"6. Industrial Indemnity was made aware that sanctions had been ordered against it through a conversation between one of its employees and an employee of one of the defendant insurance companies. A representative from Industrial Indemnity then contacted Mr. Buchanan on August 28, 1991. Mr. Buchanan confronted Respondent who confirmed the fact that sanctions had been entered. Respondent also advised Mr. Buchanan that he had misrepresented to the Court that documents had not been produced because they had been lost in transit, when in fact, Respondent had not advised the client the documents were requested.

"7. Upon this disclosure, Respondent was terminated from his employment. Mr. Buchanan arranged a telephone conference on August 29, 1991, before the Honorable Lawrence E. Sheppard, and counsel in the case. Respondent participated in the telephone conference and advised the Court and counsel of the events that had transpired. The conference was transcribed. Respondent accepted full responsibility for his actions and joined Mr. Buchanan in requesting the client, Industrial Indemnity, not be penalized. At no time during the course of the telephone conference did Mr. Buchanan acknowledge any responsibility on his part or that of his law firm in failing to adequately supervise Respondent.

"8. Respondent also voluntarily signed an Affidavit for filing in the litigation on August 28, 1991. He set forth his actions and acknowledged in the affidavit his misconduct.

"9. Respondent's law firm paid for two therapy sessions with Byron Milgram, M.D., a psychiatrist in private practice in Kansas City on August 31, 1991, and September 5, 1991. Dr. Milgram diagnosed Respondent's problems as stemming from a personality disorder—self-defeating type. Dr. Milgram concluded that Respondent's actions were not the result of any conscious wrongdoing, but arose as the result of his history of 'self-defeating' behavior.

"10. At his own expense, Respondent began therapy sessions with Jackie Baker, a licensed clinical social worker at the Johnson County Mental Health Center on September 11, 1991. He has been seen for psychotherapy on a regular basis every two to three weeks since that time and has been diagnosed as having post-traumatic stress disorder. Ms. Baker attributes the Respondent's self-defeating behavior and mode of case management of his direct supervisor as the main triggers that set Respondent's course of actions. In correspondence dated February 25, 1992, she expresses the opinion that Respondent should continue in therapy, however, he could effectively practice law at this time.

"11. On August 30, 1991, Judge Sheppard reported a violation of the model rules of professional conduct to the Disciplinary Administrator. Due to Respondent's voluntary stipulation to the Complaint, Judge Sheppard did not appear at the hearing. The Deputy Disciplinary Administrator advised the panel he had communicated with Judge Sheppard prior to the hearing

by telephone. Judge Sheppard asked that the panel be advised of the complexity of the litigation involved in this matter. Judge Sheppard further indicated that he was surprised a relatively inexperienced associate for a large law firm was given so much responsibility for the file without more supervision. Judge Sheppard voiced an opinion that the Respondent was in over his head, so to speak, and apparently failed to take the proper steps to seek assistance. While Judge Sheppard did not excuse the serious nature of these actions, Judge Sheppard did not believe disbarment was in order. Given Respondent's inexperience and obvious self-reproach, Judge Sheppard expressed his opinion a one-year suspension was in order.

"12. Respondent voluntarily ceased practicing law on August 28, 1991. He has been employed as a house painter in the Kansas City metropolitan area since that time. Respondent advised the panel he will be relocating to Phoenix, Arizona, within the next month and has accepted a non-lawyer position with a political consulting firm. He intends to continue in therapy upon his relocation. Respondent is married and has no children.

"13. Respondent presented in mitigation letters of recommendation from numerous friends and colleagues in the Bar. Respondent is portrayed as professionally competent, hardworking, personally caring and considerate. Several of the letters were from fellow associates of the Respondent who worked with him at Brown, James and Rabbit, P.C. before they left that firm to practice law elsewhere."

The hearing panel then concluded that respondent's actions with respect to his handling of the legal matters in the declaratory judgment action amounted to violations of Model Rules of Professional Conduct 1.1 (1991 Kan. Ct. R. Annot. 228); 1.3 (1991 Kan. Ct. R. Annot. 232); 1.4 (1991 Kan. Ct. R. Annot. 234); 3.3(a)(1) (1991 Kan. Ct. R. Annot. 275); 3.4(a) and (d) (1991 Kan. Ct. R. Annot. 279); and 8.4(a), (c), and (d) (1991 Kan. Ct. R. Annot. 308).

In mitigation, the hearing panel found as follows:

"The panel is advised Respondent has no prior discipline record. The panel is further advised Respondent fully cooperated with the Disciplinary Administrator throughout the course of the investigation.

"At the hearing, Respondent accepted full responsibility for his actions and demonstrated his remorse to the panel. While the panel recognizes the serious nature of the offense, the panel is convinced that Respondent should not be permanently deprived of his ability to practice law. Given his level of experience and expertise, the Respondent was not adequately supervised at his law firm in this litigation. The results were disastrous for the Respondent, his law firm and the client. Respondent's actions have been the focus of much media attention in the Kansas City area and he has suffered publicly, as well as privately, for what he did. The panel is persuaded by the fact Respondent has voluntarily stopped practicing law and has sought

counseling to help him understand and control his behavior. At the hearing, the Respondent again apologized for his behavior. The panel finds the observations and the recommendations of the district court judge, who filed the Complaint, are persuasive."

The panel then unanimously recommended that the respondent be disciplined by suspension from the practice of law for a period of one year pursuant to Supreme Court Rule 203(a)(2) (1991 Kan. Ct. R. Annot. 143). The respondent filed no exceptions to the panel's report and was directed to appear before this court pursuant to Supreme Court Rule 212(d) (1991 Kan. Ct. R. Annot. 157).

After carefully reviewing the record herein, we accept and adopt the panel's findings, conclusions, and recommendation relative to the discipline to be imposed.

IT IS THEREFORE ORDERED that Paul W. Dwight be and he is hereby suspended from the practice of law in this state for a period of one year.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1991 Kan. Ct. R. Annot. 163).

IT IS FURTHER ORDERED that the costs of the proceeding be assessed to the respondent, and that this order be published in the official Kansas Reports.